UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:02-CV-00006

CAROL HOLLAND, *et al.*                                                   Plaintiffs

v.

UNION CARBIDE CORPORATION, *et al.*                          Defendants


**MEMORANDUM OPINION AND ORDER**

This matter is before the court upon Defendant Union Carbide Corporation's Motion for Summary Judgment.[1]   (Docket No. 26-1.)   For the reasons that follow, Defendant's Motion will be DENIED.


BACKGROUND

Plaintiff Carol Holland, as Executrix of the Estate of Verdie R. Culp and Frances E. Culp, brings this action against various defendants, alleging that Plaintiff's decedent, Verdie Culp, developed asbestos-related disease as a result of exposure to asbestos-containing products while working at the Paducah gaseous diffusion plant.  According to Plaintiff, Mr. Culp, who died of mesothelioma in 2001, worked at the gaseous diffusion plant at various times during and throughout the 1950s and 1960s.  Plaintiff brings claims on theories of strict products liability, negligence, and misrepresentation, alleging that

---

[1] Union Carbide Corporation originally filed this Motion, which it incorporated in its motion in opposition to remand, in the United States District Court for the Eastern District of Pennsylvania on September 13, 2011, in the multidistrict litigation matter styled *In re: Asbestos Products Liability Litigation (No. VI)*, MDL Docket No. MDL 875, Case No. 2:09-CV-80013-ER.

UCC knew of the hazards of asbestos yet failed to warn the federal government of those hazards at the Paducah gaseous diffusion plant.

Plaintiff filed her initial complaint in this matter on January 10, 2002.  Later that year, this matter was transferred to the United States District Court for the Eastern District of Pennsylvania as part of the multidistrict litigation (MDL) matter styled *In re: Asbestos Products Liability Litigation (No. VI)*, MDL No. 875.  (*See* Docket No. 10.) The MDL Panel remanded the above-styled action back to this Court by order of December 19, 2011.  (Docket No. 15.)  Defendant Union Carbide Company (UCC) subsequently moved to vacate the MDL Panel's order of remand, which the Panel denied by order of February 13, 2011.  (Docket No. 26-8.)  At the time of remand, UCC's instant Motion for Summary Judgment was still pending.[2]

In its Motion for Summary Judgment, UCC cites to the "Declaration of Charles Turok" in support of its principal defense to Plaintiff's claims.  (*See* Docket No. 26-1, at 10, 224-25.)  That Declaration, dated November 14, 2002, was originally submitted as an exhibit in another matter before this Court, *Dexter v. Triangle Insulation & Sheet Metal, Inc.*, No. 5:02CV-263-J.  (*See* Docket No. 26-1, at 224.)  Plaintiff filed a motion to strike Turok's Declaration in this Court on November 12, 2012.  (Docket No. 28.)  In that

---

[2] In its February 13, 2011, order, the Panel acknowledged that the instant Motion remained pending, noting:

> Union Carbide, however, filed th[is] motion[] not only after the transferee court's issuance of the suggestion of remand, but also months after the deadline for filing dispositive motions had passed . . . .  Although Union Carbide argues that its counsel and counsel for the . . . *Holland* plaintiffs informally stipulated to an extension of that deadline, there is no indication that the transferee court was informed of the stipulation, much less approved it.

(Docket No. 26-8, at 2.)

motion, Plaintiff argued that Turok's Declaration should be stricken for several reasons, among which that Plaintiff had no opportunity to depose Turok and determine the veracity of his declarations.  (*See* Docket No. 28.)  Plaintiff thereafter filed her response to UCC's Motion for Summary Judgment in this Court on November 15, 2012.  (Docket No. 29.)  UCC filed a combined reply to Plaintiff's response to its Motion for Summary Judgment and response to Plaintiff's motion to strike Turok's Declaration.  (Docket No. 30.)   Despite captioning that filing as a "Reply to Plaintiffs' Response to Its Motion for Summary Judgment," UCC did not address therein the merits of its Motion for Summary Judgment.  (*See* Docket No. 30.)  UCC did, however, state that it had contacted Turok and that Turok would be available to be deposed on certain dates in December 2012 and throughout January 2013.  (Docket No. 30, at 2.)

In an order entered December 12, 2012, the Court denied Plaintiff's motion to strike Turok's Declaration and granted Plaintiff leave to depose Turok through the end of January 2013.  (Docket No. 31, at 2.)  The Court also granted Plaintiff leave to file a supplemental response to UCC's Motion for Summary Judgment "no later than 14 days after Mr. Turok's deposition is completed," and granted UCC leave to file a supplemental reply "no later than 14 days after Plaintiffs' supplemental response is filed."  (Docket No. 31, at 2.)  On December 14, 2012, Plaintiff filed a notice to take Turok's deposition on January 18, 2013, (Docket No. 32), and Turok was deposed as scheduled, (*See* Docket No. 34-1, at 1).  The Court thereafter held a telephonic conference on January 25, 2013, during which counsel for both parties was present, and by order of January 28, 2013, ordered that Plaintiff's supplemental response "be filed by **February 8, 2013**" and UCC's supplemental reply "by **February 22, 2013**."  (Docket No. 33 (emphasis in

original).)  The Court further instructed that "Counsel filing the last pleading shall notify the Court by letter, with a copy to the opposing counsel, when the matter is ripe for a decision."  (Docket No. 33, at 1.)  Plaintiff filed her supplemental response on February 26, 2013.  (Docket No. 34.)  Despite that this filing was some two-and-a-half weeks after the Court's deadline, UCC has not contested its timeliness.  Furthermore, UCC has not filed a supplemental reply since Turok's deposition was taken.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

## DISCUSSION

UCC's instant Motion seeks summary judgment on the ground that Plaintiff's claims against it are barred by the "military contractor defense." (*See* Docket No. 26-1.) Plaintiff argues that UCC is not entitled to immunity under that defense because (1) there is no evidence the federal government specified the use of asbestos-containing products; (2) those products were not "military equipment," but instead were developed for use in the private sector; (3) UCC has offered not proof that it warned the federal government of the hazards associated with those products; and (4) Kentucky tort law under which UCC

may be held liable does not create a "significant conflict" with any federal interest and, thus, should not be displaced.  (Docket No. 29, at 2, 8.)

The United States Supreme Court addressed the "military contractor defense," also called the "government contractor defense," in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  This defense is implicated in situations where a plaintiff seeks to hold liable under state tort law a contractor providing military equipment to the federal government.  *See id.* at 502.  In *Boyle*, the Supreme Court held:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonable precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 512.  The Court reasoned that the basis for this defense lies in the "discretionary function" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), which protects the United States from liability for its agents' performance of duties involving discretionary functions.  *See id.* at 511-13.  The military contractor defense has since been universally accepted and applied by United States courts, including courts in this Circuit. *See In re Aircraft Crash Litig.*, 752 F. Supp. 1326, 1336 (S.D. Ohio 1990), *aff'd* 935 F.2d 269 (6th Cir. 1991).  A defendant asserting this defense has the burden of proving its applicability.  *Lamb v. Martin Marietta Energy Sys., Inc.*, 835 F. Supp. 959, 966 (W.D. Ky. 1993) (citing *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794 (5th Cir. 1993)).

UCC argues that it is entitled to the military contractor defense because the Paducah gaseous diffusion plant was constructed at the direction of the Atomic Energy Commission (AEC) for the purpose of producing weapons-grade uranium for the United

States military.   UCC has presented evidence that the AEC, and its successor, the

Department of Energy (DOE), exercised oversight and control over UCC's operation of

the plant.   UCC insists that it merely received direction from the federal government and

that it was required to follow the guidelines developed by the AEC/DOE.   This argument,

however, does not establish the applicability of the military contractor defense to shield

UCC from liability.   In *Lamb v. Martin Marietta Energy Systems, Inc.*, this Court

addressed and rejected an analogous argument:

> This argument is deficient for two reasons. First, assuming that the
> DOE personnel gave its approval for every activity at the plant,
> such approval does not necessarily constitute a discretionary
> function. "[C]onduct cannot be discretionary unless it involves an
> element of judgment or choice. . . . Moreover, assuming that the
> challenged conduct involves an element of judgment, a court must
> determine whether that judgment is of a kind that the discretionary
> function exception was designed to shield." *Berkovitz v. United
> States*, 486 U.S. 531, 536–37 (1988).
>
> . . . .
>
> The second flaw in the defendants' argument is that even if the
> DOE had approved of all activities that were to take place at the
> plant, the defendants have failed to show that contractor personnel
> faithfully adhered to all DOE's orders.

835 F. Supp. at 966-67 (citations omitted).

Similarly, in *Dexter v. Triangle Insulation & Sheetmetal Co.*, this Court held, in

the context of a motion to remand, that UCC had not presented a colorable claim to a

defense under federal law.   Order, No. 5:09CV-263-R (W.D. Ky. June 5, 2003) (Russell,

J.). [3]   The *Dexter* plaintiff likewise sued UCC for alleged asbestos exposure at the

---

[3] This Order is attached as an exhibit to Plaintiff's response to UCC's Motion for Summary Judgment.
(*See* Docket No. 29-12.)

Paducah gaseous diffusion plant during the 1950s.  UCC removed pursuant to 28 U.S.C. § 1442, asserting that it was entitled to federal agent removal because its actions were directed by the federal government.  In support of its notice of removal, UCC attached the Declaration of Charles Turok—the same Declaration it attaches to its instant Motion and that was the subject of Plaintiff's previously discussed motion to strike.  In *Dexter*, UCC also pointed to the 1983 Supplemental Agreement, which it likewise attaches to its instant Motion.  This Court rejected UCC's position in *Dexter*:

> Mr. Turok's declaration and the articles from a 1983 contract fail to provide enough support for this Court to conclude that the federal government had direct control over the Defendants' actions during the time period when the Plaintiffs' injuries allegedly occurred. The contract, as the Plaintiffs note, speaks only to the situation after 1983, not in the early 1950s.  While it would seem to provide evidence of direct federal control after 1983, it does not meet the burden of proof required.  Mr. Turok's declaration does not recount the sort of detail necessary for this Court to determine whether the control in question was "pursuant to an officer's direct orders or to comprehensive and detailed regulations."  As Judge Weinstein noted [in *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992)], "a person or corporation establishing only that the relevant acts occurred under the general auspices of a federal office or officer [does not present a colorable claim to a defense under federal law]."

No. 5:02CV-263-R, at 1-3.

In effect, UCC now presents the same evidence in support of its Motion for Summary Judgment that it presented 20 years ago in opposition to remand.  And although having since deposed Turok, UCC did not file a supplemental reply in support of its instant Motion.  The Court in 1993 found this exact evidence insufficient to defeat remand.  Accordingly, today, this evidence is all the more insufficient to establish that

UCC is entitled to immunity under the military contractor defense and, thus, is insufficient to warrant judgment as a matter of law.

Furthermore, even if UCC had or could establish the first two prongs of *Boyle*, it makes no argument why *Boyle's* third prong is met.  Plaintiff argues that "the record is devoid of any evidence UCC provided any warning to the federal government concerning the hazards of asbestos."  (Docket No. 29, at 12.)  UCC does not contest this point in its reply, (*see* Docket No. 30), nor did UCC bother to file a supplemental reply after Turok was deposed.  Therefore, the Court finds that UCC has failed to show that the military contractor defense is applicable here.  As such, UCC has not demonstrated that summary judgment is warranted on the ground that Plaintiff's claim is barred by that defense.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Union Carbide Corporation's Motion for Summary Judgment, (Docket No. 26-1), is DENIED.

Date:

cc:       Counsel